UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA BROWN,

　　　　　Plaintiff,

AMERICAN MUTUAL HOLDINGS INC.,
CHECK SYSTEMS, LLC, INTERCHEX
SYSTEMS, LLC, JOSEPH C. BELLA III,
and ALAN E. FIELITZ,

　　　　　Defendants.

Case No. 13-cv-01072

---

## ANSWER AND AFFIRMATIVE DEFENSES

Defendants American Mutual Holdings Inc., Check Systems, LLC, InterChex Systems, LLC, Joseph C. Bella III and Alan E. Fielitz ("Defendants"), through their counsel, Olson Law Group, for their Answer and Affirmative Defenses, state as follows:

**I.     Introduction**

1.     This is an action for damages, brought by a consumer against debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq*., and the Michigan Occupational Code ("MOC"), M.C.L. §339.901 *et seq*.

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 1 for lack of sufficient information or belief as to the truth thereof, except to deny that Defendants have violated the FDCPA or the MOC, leaving Plaintiff to her strict proofs.**

**II.     Jurisdiction**

2.     This Court has jurisdiction under 15 U.S.C. §1692k(d) (FDCPA), and 28 U.S.C. §1331. This Court has supplemental jurisdiction regarding plaintiffs state law claims under 28 U.S.C. §1367. Venue in this judicial district is proper because the pertinent events took place here.

1

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 2 for lack of sufficient information or belief as to the truth thereof and because the allegations set forth legal conclusions for which no response is required, leaving Plaintiff to her strict proofs.**

## III.    Parties

3.      Patricia Brown is an adult, natural person residing in Kent County, Michigan. Ms. Brown is a "consumer" and "person" as the terms are defined and used in the FDCPA. Ms. Brown is a "consumer," "debtor" and "person" as the terms are defined and used in the MOC.

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 3 for lack of sufficient information or belief as to the truth thereof and because the allegations set forth legal conclusions for which no response is required, leaving Plaintiff to her strict proofs.**

4.      Defendant American Mutual Holdings Inc. ("AMH") is a New York corporation. Until recently, AMH operated from an office suite located at 268 Main Street, Suite 100, Buffalo, New York 14202. On September 27, 2013, AMH began moving its office, by carts and dollies, across the street to its new location in the Ellicott Square Building, 295 Main Street, Buffalo, New York 14203. The registered agent for AMH is CT Corporation System, 111 Eight Avenue, New York, New York, 10011. According to the AMH internet website (www.amhinc.net). AMH "is a debt brokerage company that specializes in the acquisition and sales of charged-off consumer debt" and specializes in the collection of delinquent payday loan portfolios. According to documents filed by AMH with the State of New York, the Chief Executive Officer of AMH is Joseph C. Bella III. AMH uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. AMH regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. AMH is a "debt collector" as the term is defined and used in the FDCPA. AMH is a "collection agency" and "licensee" as the terms are defined and used in MOC.

**ANSWER: Defendants admit that AMH: (a) is a New York corporation; (b) does business at 295 Main Street, Suite 120, Buffalo, New York 14203; and (c) uses CT Corporation System as its registered agent. Defendants neither admit nor deny the remaining allegations in Paragraph 4 for lack of sufficient information or belief as to the truth thereof and because the allegations set forth legal conclusions for which no response is required, leaving Plaintiff to her strict proofs.**

5.      Defendant Check Systems, LLC ("Check Systems") is a New York limited liability company. Until recently, Check Systems operated from an office suite located at 268 Main Street, Suite 100, Buffalo, New York 14202. On September 27, 2013, Check Systems began moving its office, by carts and dollies, across the street to its new location in the Ellicott Square Building, 295 Main Street, Buffalo, New York 14203. The registered agent for Check Systems is CT Corporation System, 111 Eight Avenue, New York, New York, 10011. Check Systems uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Check Systems regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Check Systems is a "debt collector" as the term is defined and used in the FDCPA. Check Systems is a "collection agency" and "licensee" as the terms are defined and used in MOC.

**ANSWER: Defendants admit that Check Systems: (a) is a New York limited liability company, (b) does business at 295 Main Street, Buffalo, New York 14203; and (c) uses CT Corporation System as its registered agent. Defendants neither admit nor deny the remaining allegations in Paragraph 5 for lack of sufficient information or belief as to the truth thereof and because the allegations set forth legal conclusions for which no response is required, leaving Plaintiff to her strict proofs.**

6.      Defendant Interchex Systems, LLC ("Interchex Systems") is a New York limited liability company. Until recently, Interchex Systems operated from an office suite located at 268 Main Street, Suite 100, Buffalo, New York 14202. On September 27, 2013, Interchex Systems began moving its office, by carts and dollies, across the street to its new location in the Ellicott Square Building, 295 Main Street, Buffalo, New York 14203. Interchex Systems uses interstate

commerce and the mails in a business the principal purpose of which is the collection of debts. Interchex Systems regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Interchex Systems is a "debt collector" as the term is defined and used in the FDCPA. Interchex Systems is a "collection agency" and "licensee" as the terms are defined and used in MOC.

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 6 for lack of sufficient information or belief as to the truth thereof and because the allegations set forth legal conclusions for which no response is required, leaving Plaintiff to her strict proofs.**

7.     Defendant Joseph C. Bella III is a natural person, forty years of age, and residing at 224 Summer Street, Buffalo, New York 14222. Mr. Bella uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Bella owns, operates and manages defendants American Mutual Holdings, Inc., Check Systems, LLC and Interchex Systems, LLC. Mr. Bella's email address at AMH is joe@amhinc.net . Mr. Bella regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another. Mr. Bella is a "debt collector" as the term is defined and used in the FDCPA. Mr. Bella is a "collection agency" and "licensee" as the terms are defined and used in MOC.

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 7 for lack of sufficient information or belief as to the truth thereof and because the allegations set forth legal conclusions for which no response is required, leaving Plaintiff to her strict proofs.**

8.     During all times pertinent hereto, Mr. Bella (a) helped create the collection policies and procedures used by AMH, Check Systems and Interchex Systems and their employees and/or agents in connection with their efforts to collect consumer debts, (b) managed the daily collection operations of AMH, Check Systems and Interchex Systems, (c) oversaw the

application of the collection policies and procedures used by AMH, Check Systems and

Interchex Systems, and their employees and/or agents, (d) drafted, created, approved and ratified

the tactics and scripts used by AMH, Check Systems and Interchex Systems, and their employees

and/or agents to collect debts from consumers, including the tactics and scripts that were used to

attempt to collect an alleged debt from plaintiff Patricia Brown as alleged in this complaint, (e)

ratified the unlawful debt collection practices and procedures used by AMH, Check Systems and

Interchex Systems, and their employees and/or agents in connection with their efforts to collect

consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted

financially from the unlawful debt collection practices used by AMH, Check Systems and

Interchex Systems, and their employees and/or agents in attempts to collect an alleged debt from

Ms. Brown and other consumers as alleged in this complaint.

**ANSWER: Denied as untrue.**

9.     During all times pertinent hereto, Mr. Bella directly and indirectly participated in

the unlawful debt collection practices to collect an alleged debt from Ms. Brown that are

described in this complaint.

**ANSWER: Denied as untrue.**

10.     In the past, AMH and Check Systems both have been represented by the Buffalo,

New York law firm of Lippes Mathias Wexler Friedman LLP ("Lippes"), located at 665 Main

Street, Suite 300, Buffalo, New York 14203. On July 2, 2013, Lippes filed a declaration on

behalf of AMH and Check Systems in the case of In re Jennifer Brown, Case No. 09-17358-FJO-

13, United States District Court, Southern District of Indiana, Docket No. 34, in which Lippes

stated: "Check Systems is in the business of debt collection. Check Systems does not own the

debt it collects and instead collects debt owned by third-parties. One such third party is AMH.

AMH is a debt brokerage that owns debt but does not collect debt, instead placing the debt with third-party collection companies such as Check Systems. When Check Systems secures a settlement on a debt owned by AMH, the collector transfers the debtor to an AMH representative who processes the payment on the already settled account."

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 10 for lack of sufficient information or belief as to the truth thereof, except to state that the docket and corresponding declaration speaks for itself, leaving Plaintiff to her strict proofs.**

11.     In addition to AMH, Check Systems and Interchex Systems, Mr. Bella owns, operates, manages and controls other legal entities to collect debts using the same unlawful debt collection practices that are described below in this complaint. The entities all operate from the same location as AMH, Check Systems and Interchex Systems. The entities all share the same telephone systems, office equipment, management and staff. Other than name, there is no meaningful distinction between any of the entities. All of the entities effectively operate as a single entity, under the ownership, operation, management and control of Mr. Bella and perhaps others. The AMH internet website identifies many of those additional entities. The additional entities include, but are not necessarily limited to, the following: Mullins & Kane LLC; Goldberg Maxwell LLC; and Morgan Jackson LLC.

**ANSWER:  Denied as untrue.**

12.     Mr. Bella is a convicted felon and habitual criminal. In 1993, Mr. Bella was charged in Florida and for an alcohol related offense. In 1994, Mr. Bella was charged in Florida for aggravated battery on a law enforcement officer and use of a deadly weapon. In 2002, the New York Attorney General obtained a court order against Mr. Bella and his company Radi-aid, Inc., after they were caught telephoning Western New Yorkers and leaving pre-recorded messages, falsely warning that terrorists were planning to detonate "dirty bombs" in the Buffalo,

New York area, as part of Mr. Bella's efforts to sell $29.95 "crisis kits" containing 15 potassium iodine pills which could be bought over the counter for $9.95. In 2009, Mr. Bella was charged in Florida with possession of cocaine and tampering with evidence.

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 12 because such allegations are irrelevant, immaterial and/or scandalous and, therefore, properly stricken from the record pursuant to Fed. R. Civ. Proc. 12. To the extent an answer is required, Defendants deny the allegations in the manner and form alleged and further deny that such allegations are admissible pursuant to Fed. R. Evid. 404.**

13.    Defendant Alan E. Fielitz is a natural person, sixty years of age, and residing at 5047 Hall Drive, Hamburg, New York 14075. Mr. Fielitz uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Fielitz is the controller of AMH. According to information placed by Mr. Fielitz on the internet website, www.facebook.com , Mr. Fielitz "Works at Check Systems." Mr. Fielitz's email address at AMH is alan@amhinc.net . Mr. Fielitz regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another. Mr. Fielitz is a "debt collector" as the term is defined and used in the FDCPA. Mr. Fielitz is a "collection agency" and "licensee" as the terms are defined and used in MOC.

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 13 for lack of sufficient information or belief as to the truth thereof and because the allegations set forth legal conclusions for which no response is required, leaving Plaintiff to her strict proofs.**

14.    During all times pertinent hereto, Mr. Fielitz (a) helped create the collection policies and procedures used by AMH, Check Systems and Interchex Systems and their employees and/or agents in connection with their efforts to collect consumer debts, (b) managed the daily collection operations of AMH, Check Systems and Interchex Systems, (c) oversaw the application of the collection policies and procedures used by AMH, Check Systems and Interchex Systems, and their employees and/or agents, (d) drafted, created, approved and ratified

the tactics and scripts used by AMH, Check Systems and Interchex Systems, and their

employees and/or agents to collect debts from consumers, including the tactics and scripts that

were used to attempt to collect an alleged debt from plaintiff Patricia Brown as alleged in this

complaint, (e) ratified the unlawful debt collection practices and procedures used by AMH,

Check Systems and Interchex Systems, and their employees and/or agents in connection with

their efforts to collect consumer debts, and (f) had knowledge of, approved, participated in,

ratified and benefitted financially from the unlawful debt collection practices used by AMH,

Check Systems and Interchex Systems, and their employees and/or agents in attempts to collect

an alleged debt from Ms. Brown and other consumers as alleged in this complaint.

**ANSWER: Denied as untrue.**

15.     During all times pertinent hereto, Mr. Fielitz directly and indirectly participated

in the unlawful debt collection practices to collect an alleged debt from Ms. Brown that are

described in this complaint.

**ANSWER: Denied as untrue.**

16.     Mr. Fielitz is a convicted felon. In 1979 Mr. Fielitz was admitted to the practice

of law in New York. In 1980, Mr. Fielitz was admitted to the practice of law in Florida.

Effective December 31, 2003, the States of New York and Florida suspended Mr. Fielitz from

the practice of law for one year for engaging in conduct involving dishonesty, fraud, deceit and

misrepresentation. On September 18,2008, Mr. Fielitz pleaded guilty to five counts of grand

larceny and one county of petit larceny for stealing $101,979.52 from five real estate clients and

for taking money from a sixth client to do legal work after he had been suspended from

practicing law. Mr. Fielitz resigned his law license before the automatic disbarment proceedings

were completed. On March 10, 2009, Mr. Fielitz was sentenced to four months of weekends in

jail.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 16 because such allegations are irrelevant, immaterial and/or scandalous and, therefore, properly stricken from the record pursuant to Fed. R. Civ. Proc. 12. To the extent an answer is required, Defendants deny the allegations in the manner and form alleged and further deny that such allegations are admissible pursuant to Fed. R. Evid. 404.**

17.    A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6). See Kistner v. Law Offices of Michael P. Margelefsky, LLC, 518 F.3d 433,435-438 (6th Cir. 2008); Russell v. Goldman Roth Acquisitions, LLC, 847 F.Supp.2d 994,1004-06 (W.D.Mich. 2012).

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 17 for lack of sufficient information or belief as to the truth thereof and because the allegations set forth legal conclusions for which no response is required, except to deny that Defendants engaged in wrongdoing or are liable to Plaintiff, leaving Plaintiff to her strict proofs.**

**IV.    Facts**

18.    On or about May 9, 2012, plaintiff Patricia Brown borrowed $600.00 or less from Allied Check Cashing Michigan LLC, doing business as Allied Cash Advance ("Allied"), and located at 2440 28th Street, S.E., Grand Rapids, Michigan. Ms. Brown borrowed and used the

money for personal, family and household purposes. Ms. Brown borrowed the money in what is

commonly called a "payday loan," at an annual interest rate that exceeded 300 percent.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 18 for lack of sufficient information or belief as to the truth thereof, except to admitbupon information and belief that Plaintiff borrowed funds from Allied, leaving Plaintiff to her strict proofs.**

19.    In Michigan, payday loans are regulated by the Deferred Presentment Service

Transactions Act, MCL §487.2122 *et seq.*

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 19 for lack of sufficient information or belief as to the truth thereof and because the allegations set forth legal conclusions for which no response is required, leaving Plaintiff to her strict proofs.**

20.    Allied claimed that Ms. Brown failed to repay the debt.

**ANSWER:  Upon information and belief, admitted.**

21.    Allied charged off Ms. Brown's account and related debt.

**ANSWER:  Upon information and belief, admitted.**

22.    Allied sold and transferred all of its interest in the charged-off account and related

delinquent debt to a third party.

**ANSWER:  Upon information and belief, admitted.**

23.    Allied did not retain any interest in the transferred account and related debt.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 23 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

24.    On August 12, 2013, Ms. Brown received a call on her cellular telephone. The

caller used a computer-generated voice to leave the following message: "Patricia Brown. I'm

contacting you from the Process and Summons Division. I'm calling to notify you that there will

be two charges filed against you in your county. Looks like fraudulent activity has been attached

to your name and your social security number. Patricia Brown, I do need to make you aware of

your legal rights to address your charges prior to them being filed against you. You need to do so

before you receive the your summons at your place of employment or at your home address.

Once you're served, your rights will be forfeited. Your case number is AL4655. Their telephone

number is 414-433-4786. You will need to speak to someone in their legal department."

     **ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 24 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

     25.     The telephone call described in Paragraph 24 of this complaint was placed to Ms.

Brown and the quoted message was left on Ms. Brown's cellular telephone voice mail by AMH,

Check Systems and/or Interchex Systems, and by their employees and/or agents. The quoted

message was from a script, drafted and/or approved by Mr. Bella and Mr. Fielitz.

     **ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 25 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

     26.     The message quoted in Paragraph 24 of this complaint falsely represented and

falsely implied that the caller was calling from the "Process and Summons Division."

     **ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 26 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

     27.     The message quoted in Paragraph 24 of this complaint falsely represented and

falsely implied that two charges would be filed against Ms. Brown in Kent County, Michigan.

     **ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 27 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

     28.     The message quoted in Paragraph 24 of this complaint falsely represented and

falsely implied that Ms. Brown had engaged in fraudulent activity.

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 28 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

29.    The message quoted in Paragraph 24 of this complaint falsely represented and falsely implied that Ms. Brown had committed a crime.

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 29 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

30.    The message quoted in Paragraph 24 of this complaint falsely represented and falsely implied that Ms. Brown was going to be charged with a crime.

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 30 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

31.    The message quoted in Paragraph 24 of this complaint falsely represented and falsely implied that Ms. Brown would be served with a summons at her place of employment or at her residential address.

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 31 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

32.    The message quoted in Paragraph 24 of this complaint falsely represented and falsely implied that once Ms. Brown was served with the summons, her rights would be "forfeited."

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 32 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

33.    The message quoted in Paragraph 24 of this complaint falsely represented and falsely implied that a "case" had been filed against Ms. Brown.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 33 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

34.     The message quoted in Paragraph 24 of this complaint falsely represented and

falsely implied that defendants maintain a "legal department."

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 34 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

35.     The message quoted in Paragraph 24 of this complaint falsely represented and

falsely implied that defendants employ attorneys.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 35 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

36.     The message quoted in Paragraph 24 of this complaint falsely represented and

falsely implied that the caller was calling from the "Process and Summons Division."

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 36 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

37.     The message quoted in Paragraph 24 of this complaint concealed and failed to

identity the true identify of the caller.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 37 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

38.     The message quoted in Paragraph 24 of this complaint created the illusion that

someone other than defendants and their employees were placing the call to Ms. Brown.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 38 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

39.     The message quoted in Paragraph 24 of this complaint failed to state that the

caller was a debt collector and failed to state that the caller was calling in an attempt to collect a

debt from Ms. Brown.

      **ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 39 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

      40.     On August 21, 2013 at approximately 10:57 a.m., Ms. Brown placed a telephone

call to 414-433-4786. The caller was answered by a female employee of AMH, Check Systems

and Interchex Systems. Ms. Brown stated that she was responding to a message left on her voice

mail. At the employee's request, Ms. Brown provided the last four digits of her social security

number. In the ensuing conversation, the employee made the following representations:

a) A complaint had been filed against Ms. Brown with two "charges" pending, one for breach of contract and the other for "intent to defraud a financial institution."

b) On May 9,2012, Ms. Brown had written a check to Allied Cash Advance and when Allied Cash Advance went to cash the check there was not sufficient money in the account to cover the check.

c) Allied Cash Advance has filed litigation against Ms. Brown.

d) "AL4655 is our office account number."

e) The account was "bought out by investors and a group of attorneys who have sued you."

f) The account was bought by the "Pleadings and Summons Division for Grand Rapids, Michigan."

g) The account balance was $612.83.

h) "I can contact our arbitration department and then offer you a one-time payment. I'm going to speak with the lawyer. Please hold, [forty-five second pause] The lawyer will settle for $250.00 today."

i) I don't have the original account number. The attorneys have that.

      **ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 40 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

41.     The AMH/Check Systems/Interchex Systems employee in the conversation described in Paragraph 40 of this complaint falsely represented and falsely implied to Ms. Brown that a complaint had been filed against Ms. Brown with two "charges" pending, one for breach of contract and the other for "intent to defraud a financial institution."

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 41 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

42.     The AMH/Check Systems/Interchex Systems employee in the conversation described in Paragraph 40 of this complaint falsely represented and falsely implied to Ms. Brown that Allied Cash Advance has filed litigation against Ms. Brown.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 42 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

43.     The AMH/Check Systems/Interchex Systems employee in the conversation described in Paragraph 40 of this complaint falsely represented and falsely implied to Ms. Brown that Ms. Brown's account was bought out by investors and a group of attorneys who have sued Ms. Brown.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 43 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

44.     The AMH/Check Systems/Interchex Systems employee in the conversation described in Paragraph 40 of this complaint falsely represented and falsely implied to Ms. Brown that Ms. Brown's account was bought by the "Pleadings and Summons Division for Grand Rapids, Michigan."

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 44 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

45.     The AMH/Check Systems/Interchex Systems employee in the conversation described in Paragraph 40 of this complaint falsely represented and falsely implied to Ms. Brown that during the course of the conversation she had spoken with a lawyer.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 45 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

46.     The AMH/Check Systems/Interchex Systems employee in the conversation described in Paragraph 40 of this complaint falsely represented and falsely implied to Ms. Brown that a lawyer was involved in the efforts to collect the debt from Ms. Brown.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 46 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

47.     On September 16, 2013 at approximately 11:33 a.m., Ms. Brown received a call on her cellular telephone. The caller left the following message: "Good morning. This is a courtesy notification call intended for Patricia Brown. My name is Adam Claybow, senior representative, contacting you from Check Systems. I've actually been retained to contact you being that you have a file here in the office which is forwarded up to me for a final review in regards to allegations which is being filed against your name and social security number. I would like to discuss the allegations with you before assuming your involvement in any malicious intent. It is important that you get involved before your stay of claim hasn't expired here in the office within the next twenty-four hours. If there is no return phone call, I will be forced to make a decision on your behalf, with or without your consent, by the close of business tomorrow. You can reach me directly at 585-730-6155. You must refer to your reference I.D. number, that is 38-8377. Once again Miss Brown, I'm gonna be making a very important legal decision this week concerning some of your personal financial business. I would like to give you the opportunity to

be a part of that decision. However, in order to do so you must contact me immediately, prior to the matter being entered into the Check Systems data base. I will be in the office until 5:00 p.m. Eastern Standard Time. Once again, my name is Adam Claybow, you can reach me at 585-730-6155 pertaining to reference I.D. number 38-8377. Please contact me as soon as possible. Thank you."

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 47 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

48.     The telephone call described in Paragraph 47 of this complaint was placed to Ms. Brown and the quoted message was left on Ms. Brown's cellular telephone voice mail by AMH, Check Systems and/or Interchex Systems, and by their employees and/or agents. The quoted message was from a script, drafted and/or approved by Mr. Bella and Mr. Fielitz.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 48 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

49.     The message quoted in Paragraph 47 of this complaint falsely represented and falsely implied that Ms. Brown's account had been forwarded up to the caller for a final review in regards to allegations which is being filed against your name and social security number.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 49 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

50.     The message quoted in Paragraph 47 of this complaint falsely represented and falsely implied that Ms. Brown had committed a crime or otherwise engaged in unlawful conduct with malicious intent.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 50 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

51.    The message quoted in Paragraph 47 of this complaint falsely represented and falsely implied that a "stay of claim" involving Ms. Brown would expire "within the next twenty-four hours."

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 51 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

52.    The message quoted in Paragraph 47 of this complaint falsely represented and falsely implied that the caller had authority to make a decision on Ms. Brown's "behalf, with or without your consent, by the close of business" the next day.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 52 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

53.    The message quoted in Paragraph 47 of this complaint falsely represented and falsely implied that the caller had authority to make "a very important legal decision this week concerning some of [Ms. Brown's] personal financial business."

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 53 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

54.    The message quoted in Paragraph 47 of this complaint failed to state that the caller was a debt collector and failed to state that the caller was calling in an attempt to collect a debt from Ms. Brown.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 54 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

55.    On September 24,2013 at approximately 12:06 p.m., Ms. Brown sent an email to AMH at the contact address listed by AMH on its internet website. Ms. Brown stated in the email that she had received telephone calls from telephone number 414-433-4786 regarding Case

No. AL4655 and stating that charges had been filed against her for fraud in connection with her unpaid Allied Cash Advance account. Ms. Brown asked AMH to provide her with information so that she could decide who to contact regarding payment of the account. A copy of the email as well as the related responses are attached hereto as Exhibit A.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 55 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

56.     On September 24, 2013 at approximately 12:09 p.m., Mr. Bella sent an email from joe@amhinc.net to Mr. Fielitz at alan@amhinc.net stating: "Alan, Please help this nice lady. Thank you. Joe Bella." Mr. Bella copied the email to Ms. Brown.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 56 for lack of sufficient information or belief as to the truth thereof, except to state that the quoted e-mail speaks for itself, leaving Plaintiff to her strict proofs.**

57.     On September 24, 2013 at approximately 12:17 p.m., Ms. Brown received a call on her cellular telephone. The caller left the following message: "This is Alan Fielitz with American Mutual Holdings calling Patricia Brown. Received your email relative to the Allied Cash Advance account. If you call me back on my direct toll free number, 888-460-4088, I'm sure I can help you with this situation. If I don't answer, I may be out of the office or on the phone, just leave a detailed message with your contact information so that I can call you back. Thanks a lot. Bye."

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 57 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

58.     According to the Better Business Bureau of Upstate New York, the telephone number from which Mr. Fielitz called Ms. Brown, 888-460-4088, is a telephone number that is used by and assigned to Defendant Interchex Systems, LLC.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 58 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

59.     On September 24,2013 at approximately 12:20 p.m., Mr. Fielitz sent an email from alan@amhinc.net to Ms. Brown, stating: "Patricia, I got your e-mail and just left a voice message for you. Please give me a call and I'm sure I can help you get this situation handled. Thanks for taking the time to contact us on our website."

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 59 for lack of sufficient information or belief as to the truth thereof, except to state that the quoted e-mail speaks for itself, leaving Plaintiff to her strict proofs.**

60.     On September 24, 2013 at approximately 12:35 p.m., Ms. Brown sent an email to Mr. Fielitz, stating that she preferred to communicate by email rather than by telephone.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 60 for lack of sufficient information or belief as to the truth thereof, except to state that the quoted e-mail speaks for itself, leaving Plaintiff to her strict proofs.**

61.     On September 24, 2013 at approximately 12:51 p.m., Mr. Fielitz sent an email from alan@amhinc.net to Ms. Brown, stating: "I'm just heading the door for a meeting, but when I get back I will give you the account details and the options for getting the situation handled. Thanks for getting back to me so quickly."

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 61 for lack of sufficient information or belief as to the truth thereof, except to state that the quoted e-mail speaks for itself, leaving Plaintiff to her strict proofs.**

62.     On September 24, 2013 at approximately 1:54 p.m., Mr. Fielitz sent an email from alan@amhinc.net to Ms. Brown, stating: "The original loan was from as you stated Allied Cash Advance, acct # 177599307. At the time you listed an address at 2910 Marshall Ave SE, Apt 16A, Grand Rapids, Michigan. The loan was obtained on May 9, 2012. You listed as references, Danice Mccholuk, Diane Jackson, and Janice Cotton. This company purchased all

rights to the account on 8/7/13, giving it ownership of the account. You were being contacted by Check Systems LLC, the company we authorized to contact customers to recovery payment. The current balance when we obtained the account is $812.83."

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 62 for lack of sufficient information or belief as to the truth thereof, except to state that the quoted e-mail speaks for itself, leaving Plaintiff to her strict proofs.**

63.     On September 24,2013 at approximately 2:43 p.m., Mr. Bella sent an email from joe@amhinc.net to Mr. Fielitz at alan@amhinc.net  stating: "Alan, I see no damages arising from her late response. Please allow her name and ss# to be removed from Check Systems as soon as she pays today. And please remove me from this thread. Thanks all. Joe Bella." Mr. Bella copied the email to Ms. Brown.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 63 for lack of sufficient information or belief as to the truth thereof, except to state that the quoted e-mail speaks for itself, leaving Plaintiff to her strict proofs.**

64.     Defendants falsely represented to Ms. Brown the amount owed on the account.

**ANSWER:  Denied as untrue.**

65.     Defendants falsely represented to Ms. Brown that AMH was the owner of the account and related debt. In fact, the account and related debt were owned at that time by an entity named National Credit Adjusters, L.L.C.

**ANSWER:  Defendants neither admit nor deny the allegations in Paragraph 65 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

66.     When Mr. Fielitz and Mr. Bella communicated with Ms. Brown by email on September 24, 2013, Defendants were not authorized by National Credit Adjusters, L.L.C. to collect the debt.

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 66 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

67.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity. 15 U.S.C. §1692d(6).

**ANSWER: Paragraph 67 contains no allegations against Defendants and, therefore, no further response is required.**

68.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt. 15 U.S.C. §1692e(2)(A).

**ANSWER: Paragraph 68 contains no allegations against Defendants and, therefore, no further response is required.**

69.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt. 15 U.S.C. §1692e(2)(B).

**ANSWER: Paragraph 69 contains no allegations against Defendants and, therefore, no further response is required.**

70.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. §1692e(3).

**ANSWER: Paragraph 70 contains no allegations against Defendants and, therefore, no further response is required.**

71. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action. 15 U.S.C.

§1692e(4).

**ANSWER: Paragraph 71 contains no allegations against Defendants and, therefore, no further response is required.**

72.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. §1692e(5).

**ANSWER: Paragraph 72 contains no allegations against Defendants and, therefore, no further response is required.**

73.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt. 15 U.S.C. §1692e(6)(A).

**ANSWER: Paragraph 73 contains no allegations against Defendants and, therefore, no further response is required.**

74.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA. 15 U.S.C. §1692e(6)(B).

**ANSWER: Paragraph 74 contains no allegations against Defendants and, therefore, no further response is required.**

75.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. §1692e(7).

**ANSWER: Paragraph 75 contains no allegations against Defendants and, therefore, no further response is required.**

76.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. §1692e(10).

**ANSWER: Paragraph 76 contains no allegations against Defendants and, therefore, no further response is required.**

77.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector. 15 U.S.C. §1692e(11).

**ANSWER: Paragraph 77 contains no allegations against Defendants and, therefore, no further response is required.**

78.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process. 15 U.S.C. §1692e(13).

**ANSWER: Paragraph 78 contains no allegations against Defendants and, therefore, no further response is required.**

79.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. §1692f.

**ANSWER: Paragraph 79 contains no allegations against Defendants and, therefore, no further response is required.**

80.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. §1692f(l).

**ANSWER: Paragraph 80 contains no allegations against Defendants and, therefore, no further response is required.**

81.     AMH, Check Systems, Interchex Systems, Mr. Bella and Mr. Fielitz, and their yet to be identified employees and/or agents have violated the FDCPA, 15 U.S.C. §§1692d(6), 1692e(2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (10), (11) and (13), and 1692f and 169f(1).

**ANSWER: Denied as untrue.**

82.     AMH, Check Systems, Interchex Systems, Mr. Bella and Mr. Fielitz, and their yet to be identified employees and/or agents AMH and its employees and/or agents falsely accused

Ms. Brown of defrauding a financial institution. Ms. Brown did not commit a crime under

Michigan law because the Michigan Deferred Presentment Service Transactions Act, which

regulates payday lending in Michigan, expressly states that the borrower in a payday loan

transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored."

M.C.L. §487.2158(4).

     **ANSWER: Denied as untrue.**

83. Morever, M.C.L. §750.213 states in pertinent part:

Sec. 213. MALICIOUS THREATS TO EXTORT MONEY - Any person who shall,

either orally or by a written or printed communication, maliciously threaten to accuse

another of any crime or offense ... with intent to extort money or any pecuniary

advantage whatever ... shall be guilty of a felony, punishable by imprisonment in the state

prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if

payment is not made. People v. Maranian, 359 Mich. 361 (1960).

     **ANSWER: Paragraph 83 contains no allegations against Defendants and, therefore, no further response is required.**

84.    AMH, Check Systems, Interchex Systems, Mr. Bella and Mr. Fielitz, and their yet

to be identified employees and/or agents attempted to criminally extort money from Ms. Brown

and violated M.C.L. §750.213.

     **ANSWER: Denied as untrue.**

85.    AMH, Check Systems, Interchex Systems, Mr. Bella and Mr. Fielitz, and their yet

to be identified employees and/or agents failed to send a timely written notice to Ms. Brown

containing the information mandated by the FDCPA, 15 U.S.C. §1692g(a).

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 85 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

86.     AMH, Check Systems, Interchex Systems, Mr. Bella and Mr. Fielitz, and their yet to be identified employees and/or agents, each, directly and indirectly, attempted to collect the alleged debt from Ms. Brown.

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 86 for lack of sufficient information or belief as to the truth thereof, leaving Plaintiff to her strict proofs.**

87.     Each and every act and omission of AMH, Check Systems, Interchex Systems, Mr. Bella and Mr. Fielitz, and their yet to be identified employees and/or agents, done in connection with efforts to collect the alleged debt from Ms. Brown, was done intentionally and wilfully.

**ANSWER: Denied as untrue.**

88.     AMH, Check Systems, Interchex Systems, Mr. Bella and Mr. Fielitz, and their yet to be identified employees and/or agents, each intentionally and wilfully violated the FDCPA and MOC.

**ANSWER: Denied as untrue.**

89.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. See, e.g., Pollice v. Nat 7 Tax Funding, L.P., 225 F.3d 379,404 (3rd Cir. 2000).

**ANSWER: Defendants neither admit nor deny the allegations in Paragraph 89 for lack of sufficient information or belief as to the truth thereof and because the allegations set forth legal conclusions for which no response is required, leaving Plaintiff to her strict proofs.**

90.     AMH, Check Systems, Interchex Systems, Mr. Bella and Mr. Fielitz, and other yet to be identified persons, entities, employees and/or agents, created, organized, led, managed

and/or actively participated in a criminal enterprise and organization, through which AMH,

Check Systems, Interchex Systems, Mr. Bella and Mr. Fielitz, participated in a comprehensive

scheme, with dozens of persons, to communicate with consumers and use scripted threats of

criminal extortion and other unlawful debt collection practices that violated the FDCPA and

Michigan law.

**ANSWER: Denied as untrue.**

91.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate

abusive debt collection practices by debt collectors" and "to insure that those debt collectors who

refrain from using abusive debt collection practices are not competitively disadvantaged." 15

U.S.C. §1692(e).

**ANSWER: Paragraph 91 contains no allegations against Defendants and, therefore, no further response is required.**

92.     Defendants, to increase their business and profits, have knowingly chosen to use

debt collection practices that violate the FDCPA and Michigan law, to the competitive

disadvantage of those debt collectors who have chosen to abide by the law and refrain from using

those same unlawful debt collection practices.

**ANSWER: Denied as untrue.**

93.     As an actual and proximate result of the acts and omissions of defendants and

their employees and agents, plaintiff has suffered actual damages and injury, including but not

limited to, monetary loss, intense fear, stress, mental anguish, emotional stress, acute

embarrassment, anxiety, loss of sleep, physical distress, and suffering, for which she should be

compensated in an amount to be established by jury and at trial.

**ANSWER: Denied as untrue.**

27

V.     **Claims for Relief**

### Count 1 - Fair Debt Collection Practices Act

94.     Plaintiff incorporates the foregoing paragraphs by reference.

**ANSWER:  Defendants incorporate their previous responses as if fully set forth herein.**

95.     Defendants have violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a)     Defendants violated 15 U.S.C. §1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)     Defendants violated 15 U.S.C. §1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)     Defendants violated 15 U.S.C. §1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)     Defendants violated 15 U.S.C. §1692g.

**ANSWER:  Denied as untrue.**

WHEREFORE, Defendants American Mutual Holdings Inc., Check Systems, LLC, InterChex Systems, LLC, Joseph C. Bella III and Alan E. Fielitz request that this Court: (a) dismiss Plaintiff's claims in their entirety; (b) award Defendants their fees and costs wrongfully incurred in defense of this matter; and (c) grant Defendants such other and further relief as is just and proper.

### Count 2 - Michigan Occupational Code

96.     Plaintiff incorporates the foregoing paragraphs by reference.

**ANSWER: Defendants incorporate their previous responses as if fully set forth herein.**

97.     Defendants have violated the MOC. Defendants' violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. §339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. §339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. §339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. §339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. §339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. §339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)      Defendants violated M.C.L. §339.915(q) by failing to implement a procedure designed to prevent a violation by an employee;

h)      Defendants violated M.C.L. §339.918; and

i)      Defendants violated M.C.L. §339.919.

**ANSWER:  Denied as untrue.**

WHEREFORE, Defendants American Mutual Holdings Inc., Check Systems, LLC, InterChex Systems, LLC, Joseph C. Bella III and Alan E. Fielitz request that this Court: (a) dismiss Plaintiff's claims in their entirety; (b) award Defendants their fees and costs wrongfully incurred in defense of this matter; and (c) grant Defendants such other and further relief as is just and proper.

<div style="margin-left:50%">

Respectfully Submitted,

/s/ Charity A. Olson
Charity A. Olson (P68295)
OLSON LAW GROUP
Attorneys for Defendants
2723 S. State St., Suite 150
Ann Arbor, MI  48104
(734) 222-5179
colson@olsonlawpc.com

</div>

Dated: October 28, 2013

## AFFIRMATIVE DEFENSES

1.     Plaintiff has failed to state a claim upon which relief can be granted.

2.     To the extent Defendants violated the FDCPA, any such violation was an unintentional, bona fide error that occurred despite the maintenance of reasonable procedures designed to avoid such errors.

3.     Plaintiff's claims are barred, in whole, or in part, by consent, estoppel, waiver, laches and/or unclean hands.

4.     Plaintiff's claims may be subject to an arbitration agreement that requires Plaintiff to submit her claims to mandatory and binding arbitration. Accordingly, Defendants will exercise their rights to compel arbitration under the agreement, if and as appropriate.

5.     Plaintiff has no damages.

6.     Plaintiff has failed to mitigate her damages, if any.

7.      Plaintiff's damages, if any, are speculative.

8.      Plaintiff's claims may be precluded, in whole or part, to the extent Plaintiff's damages, if any, were caused by Plaintiff's own acts and/or omissions.

9.      Plaintiff's claims may be precluded, in whole or part, to the extent Plaintiff's damages, if any, were caused by the acts and/or omissions of persons or entities over which Defendants had no control or authority.

10.     Plaintiff's claims against Defendants are barred insofar as the actions complained of in the Complaint, if true, were undertaken outside the scope of employment.

11.     To the extent Defendants' conduct violated the law, such conduct was neither willful nor malicious.

12.     To the extent Plaintiff's claims have been tendered in bad faith and for the purpose of harassment, Defendants will seek recovery of their fees and costs.

13.     Defendants reserve the right to assert additional defenses as may become apparent through additional investigation and discovery.

Respectfully Submitted,

/s/ Charity A. Olson
Charity A. Olson (P68295)
OLSON LAW GROUP
Attorneys for Defendants
2723 S. State St., Suite 150
Ann Arbor, MI  48104
(734) 222-5179
Dated: October 28, 2013          colson@olsonlawpc.com

## Proof of Service

     I, Charity A. Olson, hereby state that on October 28, 2013, I electronically filed the foregoing instrument with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

<div align="right">

/s/ Charity A. Olson
Charity A. Olson (MI P68295)
OLSON LAW GROUP
Attorneys for Defendants
2723 S. State St., Suite 150
Ann Arbor, MI  48104
(734) 222-5179
</div>

Dated: October 28, 2013                               colson@olsonlawpc.com